**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EDWARD MATTHEW BUCKLEY, | ) | |
| Plaintiff, | ) | Case No.: |
| | ) | |
| | ) | Judge: |
| v. | ) | Magistrate: |
| | ) | |
| PEAK6 INVESTMENTS, LP, PEAK6 MEDIA | ) | JURY DEMANDED |
| LLC, PEAK6 LLC, PEAK6 ONLINE LLC, | ) | |
| JENNIFER JUST, and MATT HULSIZER, | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES the Plaintiff, Edward Matthew Buckley ("Buckley" or "Plaintiff"), by and through his undersigned attorneys, and for Complaint against the Defendants, PEAK6 Investments, LP, PEAK6 Media LLC, PEAK6 Online LLC, and PEAK6 LLC (Collectively referred to as "PEAK6") and Jennifer Just ("Just") and Matt Hulsizer ("Hulsizer"), states as follows:

### NATURE OF THE CASE

1.     The case includes claims of tortuous interference with prospective business advantage, tortuous interference with contractual relationship, breach of contract, intentional infliction of emotional distress arising under the laws of Illinois, and violations of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. section 4301 et seq.

2.      This Court has Federal Question Jurisdiction over Plaintiff's USERRA claims pursuant to

28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims under  28 U.S.C.

§ 1367.


3.      That this Court also has diversity jurisdiction over this matter based upon 28 U.S.C.

Paragraph 1332. The amount in controversy exceeds $75,000.


**JURISDICTION AND VENUE**

4.      Venue in the Northern District of Illinois, Eastern Division, is proper as the events giving

rise to the claims in this Complaint occurred primarily in Illinois.


5.      Plaintiff, Matthew Buckley, is a citizen of the State of Florida.


6.      Defendant, PEAK6 Investments, LP is, and at all times mentioned was, an organization

organized under the laws of the State of Delaware and, with its principal place of business at 141

West Jackson Boulevard, Suite 500, Chicago, Illinois 60604.


7.      Defendant, PEAK6 Media LLC  is a limited liability company organized under the laws

of the State of Illinois and, with its principal place of business at 141 West Jackson Boulevard,

Suite 500, Chicago, Illinois 60604.


8.      Defendant, PEAK6 LLC is a limited liability company organized under the laws of the

State of Illinois and, with its principal place of business at 141 West Jackson Boulevard, Suite 500, Chicago, Illinois 60604.

9.      Defendant, PEAK6 Online LLC is a limited liability company organized under the laws of the State of Illinois and, with its principal place of business at 141 West Jackson Boulevard, Suite 500, Chicago, Illinois 60604.

10.     At all relevant times, the Defendant, Matt Hulsizer, has been a citizen of the State of Illinois.

11.     At all relevant times, the Defendant, Jennifer Just, has been a citizen of the State of Illinois.

## COMMON FACTS

12.     That Buckley was hired by PEAK6 on February 6, 2006.

13.     That Buckley's employment with PEAK6 terminated on  July 10, 2009. During th twelve months preceding his termination, Buckley served as chief executive officer ("CEO") of PEAK6 Media.

14.     That PEAK6 operates ONN.tv. ONN.tv (Options News Network) which is a website that provides current news and information regarding financial markets. It produces daily written and

media content for the web relating to equity options and futures.

15.     That as CEO, Plaintiff  led a team of technologists, traders, video production staff, and some operations personnel to produce written and media content for the ONN.tv website. As CEO, Plaintiff drafted performance reports for employees, determined end of year bonuses, and set the business strategy.

16.     That on January 23, 2007, Buckley executed the "Employee Agreement Regarding Confidentiality, Non-Solicitation and Non-Competition" agreement. ("First Agreement") (Exhibit A) in consideration for continued employment with PEAK6.

17.     That the First Agreement contained the following non-competition covenants:

Section 2, B
Non-Solicitation of Customers. During Employee's employment and for twelve (12) months thereafter, Employee will not (on behalf of any person or entity other than the Company), directly or indirectly, provide any service offered by the Company, or solicit for the purpose of providing any service offered by the Company, to any customer, client, or other user of the Company's services with which Employee conducted business on the Company's behalf at any time during the twelve (12)-month period immediately preceding the termination of Employee's employment. For the sake of clarity, Employee understands and agrees that the term "customer or client of the Company" also includes, but is not limited to, any counterparty, broker, financial institution or trading desk with which the Company conducted transactions for the purchase, sale or exchange of stock options or other derivatives,

Section 2, C
Non-Competition. During Employee's employment and for the period of six (6) months thereafter, Employee will not, anywhere in the United States, become employed or engaged by any person or entity that competes

with the Company in the Business, for the purpose of performing job
duties or other services that are similar to the job duties or other services
that Employee performed for the Company at any time during the twelve
(12)-month period immediately preceding the termination of Employee's
employment.

18.     That in or around January of 2009, Buckley executed a second agreement entitled

Non-Compete Agreement   ("Second Agreement"). (Exhibit B).

19.     That the terms of the Second Agreement provided for a restricted period after the

termination of Buckley's employment prohibiting him from engaging in any competitive activity

with PEAK6.

20.     That the Second Agreement also contains a provision that the duration of the  restricted

period shall be either 0, 3, 6, 9, or 12 months. PEAK6 has ten days after the termination of the

employment to elect the length of the restricted period.

21.     That the Second Agreement also contains a provision that during the restricted period

PEAK6 must transfer to Plaintiff his average base monthly salary during the previous 18 months

each month of the restricted period.

22.     That Buckley was terminated by PEAK6 on or around June 30, 2009.

23.     That PEAK6 failed to elect to enforce the non-compete provisions of the second

agreement  within 10 days of Buckley's termination.

24.     That Buckley's average base salary during the 18 months prior to the termination of his employment with PEAK6 was approximately $20,833.33.

25.     That PEAK6 never paid Buckley any sum of money pursuant to the Second Agreement.

26.     That on July 21, 2009, Buckley was offered and accepted a job with Investools, Inc. to serve as a workshop instructor.

27.     That Buckley was scheduled to fly to Nevada for a training session beginning on August 3, 2009.

28.     That Buckley was promised a yearly income in the range between $250,000.00 and $500,000.00 with Investools, Inc.

29.     That as a workshop instructor, Buckley would travel the country conducting workshops on Investools, Inc.'s product Investools, Investor Tool Box, and selling educational classes. Buckley's principal job duties would be to sell investools to potential customers at these workshops.

30.     That Investools is a program that teaches individuals how to invest money in various markets.

31.     That Investools, Inc. does not sell any other products or provide any financial services to customers.

32.     That Investools does not allow its customers to sell or buy stocks, options or derivatives through its website or programs.

33.     That none of Investools, Inc.'s nor its educational subsidiaries nor any of their respective officers, personnel, representatives, agents or independent contractors are, in such capacities, licensed financial advisers, registered investment advisers or registered broker-dealers.

34.     That neither Investools, Inc. nor such educational subsidiaries provide investment or financial advice or make investment recommendations, nor are they in the business of transacting trades, nor do they direct client futures accounts or give futures trading advice tailored to any particular client's situation.

35.     That PEAK6 does not sell or offer any comparable software, programs, or services to Investools, Inc.

36.     That on July 23, 2009, Buckley was informed by Investools, Inc. that his employment offer with Investools, Inc. had been withdrawn.

37.     That the reason provided to Buckley for this withdrawal was that PEAK6 had informed

Investools, Inc. that Buckley's employment would violate the First Agreement.

38.     That on July 27, 2009, Buckley called and spoke with Hulsizer and asked why Hulsizer

had objected to Buckley's employment with Investools, Inc. Hulsizer informed Buckley his

employment with Investools, Inc. violated the First Agreement.

<u>COUNT I</u>
<u>MATTHEW BUCKLEY'S COMPLAINT FOR TORTUOUS INTERFERENCE WITH
CONTRACTUAL RELATIONSHIP DIRECTED AT PEAK6 INVESTMENTS, LP, PEAK
6LLC, PEAK6 MEDIALLC, MATT HULSIZER AND JENNIFER JUST</u>

39.     That Plaintiff incorporates the preceding paragraphs by reference here.

40.     That Plaintiff had a valid contractual employment relationship with Investools, Inc.

41.     That Defendants were aware of this relationship when a representative from Investools,

Inc. called Matt Hulsizer in or around the last week of July of 2009.

42.     That Defendants intentionally interfered with this contractual relationship when it

informed Investools, Inc. that Plaintiff's employment violated the First Agreement.

43.     That this interference was unwarranted and conducted in bad faith as Defendant failed to

elect a restricted period nor pay Plaintiff during the restricted period pursuant to the Second

Agreement.

44.     That even if the Defendants believed the First Agreement controlled Plaintiff's post PEAK6 employment, its conduct was still in bad faith as Plaintiff's position as an educational salesmen did not compete in anyway with PEAK6 or any of its subsidiaries or affiliates.

45.     That Section 2B of the First Agreement does not apply as Plaintiff's position with Investools, Inc. and did not involve any interaction or solicitation of business with any customers or clients of PEAK6 that Plaintiff had contact with while employed by PEAK6.

46.     That Section 2C of the First Agreement does not apply as Plaintiff is not performing the same services or work functions for Investools, Inc. that he performed for PEAK6.

47.     That Defendant had no reasonable basis for interfering with the contractual relationship between Plaintiff and Investools, Inc.

48.     That as a result of Defendants' intentional interference with Plaintiff's contractual relationship with Investools, Inc., Investools terminated their employment relationship with Plaintiff.

49.     That Defendants' treatment of Plaintiff was motivated by evil motive and intent and that Defendant was recklessly and callously indifferent to Plaintiff's rights.

50.     That as further evidence of Defendants' evil motive and intent, on April 1, 2010,

Defendants intentionally interfered with Plaintiff's employment at Options University threatening legal action against Options University. That this interference was again unwarranted and conducted in bad faith as there was no legal or factual basis for the allegations in the letter.

51.     That as a result of Defendants' intentional interference with Plaintiff's contractual relationship with Investools, Inc., Plaintiff has lost and will continue to lose substantial income, including, but not limited to, wages, fringes, pension, seniority benefits, and other employment benefits.

52.     That as a further result of Defendants' intentional interference with Plaintiff's contractual relationship with Investools, Inc., Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about his future and his ability to support himself and family, harm to his employability and earning capacity, damage to his reputation, disruption to his personal life, and loss of enjoyment of the ordinary pleasures of life.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to provide the following equitable and legal remedies:

a.      Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.      Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

c.      Award Plaintiff a judgment against Defendant for front pay, backpay and other compensatory damages in an amount exceeding $1,000,000.

d.      Award Plaintiff prejudgment interest.

e.      Grant judgment against Defendant for punitive damages for willful and wanton conduct.

f.      Grant such other and further relief as this Court deems just and proper.

## COUNT II
## MATTHEW BUCKLEY'S COMPLAINT FOR TORTUOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIP DIRECTED AT PEAK6 INVESTMENTS, LP, MATT HULSIZER AND JENNIFER JUST

53.     That Plaintiff incorporates the preceding paragraphs by reference here.

54.     That Plaintiff had a valid prospective employment relationship with Investools, Inc.

55.     That Defendants were aware of this relationship when a representative from Investools, Inc. called Matt Hulsizer in or around the last week of July of 2009.

56.     That Defendants intentionally interfered with this prospective business relationship when it informed Investools, Inc. that Plaintiff's employment violated a the First Agreement.

57.     That this interference was unwarranted and conducted in bad faith as Defendant failed to elect nor pay Plaintiff during a restricted period pursuant to the Second Agreement.

58.     That even if the Defendants believed the First Agreement controlled Plaintiff's post

PEAK6 employment, its conduct was still in bad faith as Plaintiff's position as an educational salesmen did not compete in anyway with PEAK6 or any of its subsidiaries or affiliates.

59.     That Section 2B of the First Agreement does not apply as Plaintiff's position with Investools, Inc., did not involve any interaction or solicitation of business with any customers or clients of PEAK6 that Plaintiff had contact with while employed by PEAK6.

60.     That Section 2C of the First Agreement does not apply as Plaintiff would not have been performing the same services for Investools, Inc. that he performed for PEAK6.

61.     That Defendant had no reasonable basis for interfering with the prospective business relationship between Plaintiff and Investools, Inc.

62.     That as a result of Defendants' intentional interference with Plaintiff's prospective business relationship with Investools, Inc., Investools terminated their employment relationship with Plaintiff.

63.     That Defendants' treatment of Plaintiff was motivated by evil motive and intent and that Defendant was recklessly and callously indifferent to Plaintiff s rights.

64.     That as further evidence of Defendants' evil motive and intent, on April 1, 2010, Defendants intentionally interfered with Plaintiff's employment at Options University threatening

legal action against Options University. That this interference was again unwarranted and

conducted in bad faith as there was no legal or factual basis for the allegations in the letter.

65.     That as a result of Defendants' intentional interference with Plaintiff's prospective

business relationship with Investools, Inc., Plaintiff has lost and will continue to lose substantial

income, including, but not limited to, wages, fringes, pension, seniority benefits, and other

employment benefits.

66.     That as a further direct and proximate result of said unlawful conduct,  Plaintiff has

suffered in physical illness and emotional stress on the relationships between Plaintiff, his

friends, family, and colleagues.

67.     That as a further result of Defendants' intentional interference with Plaintiff's prospective

business relationship with Investools, Inc., Plaintiff has suffered extreme mental anguish,

outrage, severe anxiety about his future and his ability to support himself and family, harm to his

employability and earning capacity, damage to his reputation, disruption to his personal life, and

loss of enjoyment of the ordinary pleasures of life.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to provide the following
equitable and legal remedies:

      a.     Advance this case on the docket, order a speedy hearing at the earliest
practicable date and cause this case to be expedited in every possible way.

b.    Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

c.    Award Plaintiff a judgment against Defendant for front pay, backpay and other compensatory damages in an amount exceeding $1,000,000.

d.    Award Plaintiff prejudgment interest.

e.    Grant judgment against Defendant for punitive damages for willful and wanton conduct.

f.    Grant such other and further relief as this Court deems just and proper.

## COUNT III
## MATTHEW BUCKLEY'S COMPLAINT FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS DIRECTED AT PEAK6 INVESTMENTS, LP, MATT HULSIZER AND JENNIFER JUST

68.    That Plaintiff incorporates the preceding paragraphs by reference here.

69.    That Defendants caused Plaintiff to lose his employment with Investools, Inc. without any legitimate business reason.

70.    That Defendants knew that Plaintiff supported his wife and children and had a large mortgage.

71.    That on April 1, 2010, Defendants intentionally interfered with this contractual relationship when it sent a letter to Options University threatening legal action against Options University.

72.    That on April 1, 2010, Jay Coppoletta, Chief Legal Officer of PEAK6, sent Options University a letter via facsimile and U.S. Mail, stating that it objected to claims made by Plaintiff on a video on Option University's website. This letter further stated that if the video was not removed, it would not hesitate to take necessary legal action. The letter further stated that the statements made by Plaintiff were false or misleading and violated a confidentiality agreement entered into by Plaintiff.

73.    That this interference was unwarranted and conducted in bad faith as there was no legal or factual basis for the allegations in the letter. The statements made by Plaintiff on said video were not false or misleading and did not violate any confidentiality agreement entered into by Plaintiff.

74.    That Defendant had no reasonable basis for interfering with the contractual relationship between Plaintiff and Options University.

75.    That Defendants' conduct in intentionally interfering with Plaintiff's employment with Investools, Inc. amounts to extreme and outrageous conduct.

76.    That Defendants' conduct in intentionally interfering with Plaintiff's contractual relationship  with Options University also amounts to extreme and outrageous conduct.

77.    That Defendants knew or had reason to know that its actions in interfering with Plaintiff's

employment at Investools, Inc. and Options University would cause the Plaintiff to suffer severe emotional distress.

78.     That Defendants' treatment of Plaintiff was motivated by evil motive and intent and that Defendant was recklessly and callously indifferent to Plaintiff's rights.

79.     That the Plaintiff has suffered severe emotional distress as a result of the actions of the Defendants.

80.     That as a further direct and proximate result of Defendants' actions,  Plaintiff has suffered in physical illness and emotional stress on the relationships between Plaintiff, his friends, family, and colleagues.

81.     That as a further direct and proximate result of Defendants' actions, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about his future and his ability to support himself and family, harm to his employability and earning capacity, damage to his reputation, disruption to his personal life, and loss of enjoyment of the ordinary pleasures of life.

82.     That Plaintiff suffers from severe anxiety regarding his ability to financially support himself and his family.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to provide the following equitable and legal remedies:

a.      Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.      Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

c.      Award Plaintiff a judgment against Defendant for mental anguish damages and other compensatory damages.

d.      Award Plaintiff prejudgment interest.

e.      Grant judgment against Defendant for punitive damages for willful and wanton conduct.

f.      Grant such other and further relief as this Court deems just and proper.

## COUNT IV
## MATTHEW BUCKLEY'S COMPLAINT AT LAW FOR BREACH OF CONTRACT DIRECTED AT PEAK6 INVESTMENTS, LP

83.     That Plaintiff incorporates the preceding paragraphs by reference here.

84.     The Second Agreement is a valid contract as it was offered to and accepted by Buckley and supported by the consideration of continued employment with PEAK6.

85.     That the Second Agreement provides that PEAK6 pay Plaintiff a monthly payment equal to Plaintiff's average monthly salary during the 18 months preceding his termination from PEAK6 during the restricted period.

86.     That PEAK6 did not elect a restricted period pursuant to the Second Agreement, but still

Page 17 of  26

sought to enforce the non-compete provisions against Plaintiff.

87.     That if PEAK6 intended on enforcing the covenant's not to compete with respect to Plaintiff, the Second Agreement requires that PEAK6 distribute to Plaintiff a monthly payment in the amount equal to his average monthly salary during the restricted period.

88.     That PEAK6 breached the Second Agreement by not transferring to Plaintiff the monthly payments as required by the contract.

89.     That PEAK6 further breached the Second Agreement by interfering with Plaintiff's employment with Investools, Inc., without having elected to enforce a restricted period within ten days of Plaintiff's termination from Defendant.

90.     That as a result of these breaches, Plaintiff lost the bargained benefit of the Second Agreement of monthly payments in the amount of $20833.33 for a twelve month period as well as his employment with Investools, Inc.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to provide the following equitable and legal remedies:

      a.    Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

      b.    Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

     c.       Award Plaintiff a judgment against Defendant for $250,000 in compensatory damages for breach of contract.

     d.       Award Plaintiff prejudgment interest.

     e.       Grant such other and further relief as this Court deems just and proper.

## COUNT V
## MATTHEW BUCKLEY'S COMPLAINT AT LAW FOR TORTUOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP DIRECTED AT PEAK6 INVESTMENTS, LP, PEAK 6 LLC, PEAK6 MEDIA LLC, MATT HULSIZER AND JENNIFER JUST

91.     That Plaintiff incorporates the preceding paragraphs by reference here.

92.     That Plaintiff had a valid contractual relationship with Options University on April 1, 2010.

93.     That Defendants were aware of this relationship on April 1, 2010.

94.     That on April 1, 2010, Defendants intentionally interfered with this contractual relationship when it sent a letter to Options University threatening legal action against Options University.

95.     That on April 1, 2010, Jay Coppoletta, Chief Legal Officer of PEAK6, sent Options University a letter via facsimile and U.S. Mail, stating that it objected to claims made by Plaintiff

on a video on Option University's website. This letter further stated that if the video was not removed, it would not hesitate to take necessary legal action. The letter further stated that the statements made by Plaintiff were false or misleading and violated a confidentiality agreement entered into by Plaintiff.

96.     That this interference was unwarranted and conducted in bad faith as there was no legal or factual basis for the allegations in the letter. The statements made by Plaintiff on said video were not false or misleading and did not violate any confidentiality agreement entered into by Plaintiff.

97.     That Defendant had no reasonable basis for interfering with the contractual relationship between Plaintiff and Options University.

98.     That  Plaintiff's contractual relationship with Options University was harmed as a result of Defendants' intentional interference with said contractual relationship.

99.     That Defendants' treatment of Plaintiff was motivated by evil motive and intent and that Defendant was recklessly and callously indifferent to Plaintiff's rights.

100.     That as a further result of Defendants' intentional interference with Plaintiff's contractual relationship with Options University, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about his future and his ability to support himself and family, harm to his

employability and earning capacity, damage to his reputation, disruption to his personal life, and

loss of enjoyment of the ordinary pleasures of life.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to provide the following equitable and legal remedies:

    a.    Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

    b.    Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

    c.    Award Plaintiff a judgment against Defendant for mental anguish and other compensatory damages.

    d.    Award Plaintiff prejudgment interest.

    e.    Grant judgment against Defendant for punitive damages for willful and wanton conduct.

    f.    Grant such other and further relief as this Court deems just and proper.


**COUNT VI**
**VIOLATION OF 38 U.S.C. § 4316(d) of USERRA  DIRECTED AT PEAK6**
**INVESTMENTS, LP, PEAK 6 LLC, AND PEAK6 MEDIA LLC**


101.    That Plaintiff incorporates the preceding paragraphs by reference here.


102.    That Plaintiff served in the Navy on active duty from April of 1991 until November of

2000 as an aviator.

103.    That Plaintiff served in the Naval reserves from December of 2000 to December of 2006 as an aviator. Plaintiff's position was that of Adversary Officer responsible for training all squadron pilots in threat tactics.

104.    That Plaintiff was recalled to active duty from October 7, 2002 to March 15, 2003 to serve as Naval aviator in Operation Enduring Freedom and Operation Noble Eagle fighting.

105.    That Plaintiff served in the Naval Reserves an aviator in Strike Fighter Squadron 201 (VFA-201), known as "The Hunters" based at the Naval Air Station Joint Reserve Base in Forth Worth, Texas.

106.    That Plaintiff's reservist obligations required him to take intermittent leave during his employment with Defendants.

107.    That from approximately February 2006 through September 2006, Defendants forced Plaintiff to use paid vacation time when taking leave for his reservist obligations.

108.    As a result, Plaintiff suffered damages in not being able to utilize his earned vacation time for non reservist activities and suffered a violation 38 U.S.C. § 4316(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to provide the following equitable and legal remedies:

a.  Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.  Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

c.  Award Plaintiff a judgment against Defendant for backpay and other compensatory damages.

d.  Award Plaintiff prejudgment interest.

e.  Grant judgment against Defendant for punitive damages for willful and wanton conduct.

f.  Award Plaintiff liquidated damages.

g.  Order a permanent injunction prohibiting Defendant from further acts violating USERRA.

h.  Grant such other and further relief as this Court deems just and proper.

<u>COUNT VII</u>
<u>DISCRIMINATION AGAINST PLAINTIFF DUE TO SERVICE IN MILITARY
RESERVES UNDER USERRA DIRECTED AT PEAK6 INVESTMENTS, LP, PEAK 6
LLC, AND PEAK6 MEDIA LLC</u>

109.  That Plaintiff incorporates the preceding paragraphs by reference here.

110.  That from approximately February 2006 until September 2006, Defendants subjected Plaintiff to unlawful terms and conditions of employment due to his service in the Naval Reserves.

111.  That from approximately February 2006 and continuing until September of 2006, Defendants conditioned Plaintiff's continued employment on Plaintiff quitting his service in the Naval Reserves.

Page 23 of 26

112.    That in or around September 2006, and as a result of Defendants' actions, Plaintiff was forced to quit the Naval Reserves. Plaintiff's last flight in the Naval Reserves was on September 16, 2006, and he was honorably discharged in December of 2006.

113.    That as a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose substantial income from his reservist position, including, but not limited to, wages, fringes, pension, seniority benefits, and other employment benefits.

114.    That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, outrage, disruption of his personal life, and loss of enjoyment of the ordinary pleasures of life.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to provide the following equitable and legal remedies:

a.    Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.    Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

c.    Award Plaintiff a judgment against Defendant for front pay, backpay and other compensatory damages.

d.    Award Plaintiff prejudgment interest.

e.    Grant judgment against Defendant for punitive damages for willful and

wanton conduct.

f.        Award Plaintiff liquidated Damages.

g.        Order a permanent injunction prohibiting Defendant from further acts violating USERRA.

h.        Grant such other and further relief as this Court deems just and proper.


Respectfully Submitted,
Matthew Buckley

By:  s/ Uche Asonye
    One of his attorneys

Uche O. Asonye - 06209522
Scott Fanning -6292790
ASONYE & ASSOCIATES
39 South LaSalle Street, Suite 815
Chicago, Illinois 60603
(312) 795-9110
(312) 795-9114 (Fax)

## JURY DEMAND

NOW COMES Plaintiff by his undersigned attorney, and demands a trial by jury

in the above entitled cause of action.


Respectfully Submitted,
Matthew Buckley

By: _s/ Uche Asonye_____
    One of his attorneys

Uche O. Asonye - 06209522
Scott Fanning -6292790
ASONYE & ASSOCIATES
39 South LaSalle Street, Suite 815
Chicago, Illinois 60603
(312) 795-9110
(312) 795-9114 (Fax)