# PEAK6

## Employee Agreement Regarding Confidentiality, Non-Solicitation and Non-Competition

This Employee Confidentiality, Non-Solicitation and Non-Competition Agreement ("Agreement") is made and entered into as of  January 23 , 2007 by and between PEAK6 Investments, L.P., a Delaware limited partnership, and any of its successors and current or future parents, subsidiaries, and affiliates (which at present include PEAK6 Capital Management LLC, PEAK6 Performance Management LLC, Just Options LLC, OptionsHouse, Inc. and PEAK6 Advisors LLC (collectively, the "Firm"), and  E. M. Buckley  ("Employee").

WHEREAS, the Company directly or indirectly through its affiliates engage in a broad range of financial services on a global basis, including, but not limited to, trading of securities and other instruments including, without limitation, equities and equity derivatives; investment management, including without limitation, managing hedge funds and other investment vehicles; and trading and brokerage services (the "Business");

WHEREAS, the Company has and will expend considerable time, effort and resources in the development of proprietary information and client relationships related to the Business, which must be maintained as confidential in order to ensure the Company's success; and

WHEREAS, Employee has had and/or will have access to such information and relationships;

NOW THEREFORE, in consideration of Employee's employment by the Company and the compensation and benefits conferred by same, and the access given Employee to the aforesaid information and relationships, the parties hereto agree as follows:

A. **Definitions.** As used herein, the term "**Proprietary Information**" means any and all non-public information relating to the Company, whether oral or written, that is confidential or proprietary in nature, and includes but is not limited to:

  1. Inventions, designs, methods, systems, strategies, discoveries, works of authorship, trade secrets, creations, improvements or ideas developed or otherwise produced, acquired or used by the Company;

  2. The Company's proprietary programs, processes or software, consisting of, but not limited to, computer programs in source or object code and all related documentation, technical information and training materials, including all upgrades, updates, improvements, derivative works and modifications thereof, all algorithms, databases, models, programs and analyses of data, and including all such items in incomplete stages of design or which are part of the Company's research and development;

  3. The Company's methods of doing business, including proprietary methods of trading and servicing methods for options, and any educational processes and material related thereto;

  4. Trademarks, patents, copyrights, service marks, trade names and trade dress, along with all applications for the foregoing;

  5. The Company's business records, including market research, development or marketing plans, business strategies which have been implemented or are being considered and the Company's pricing information, pricing methods and financial information;

  6. The Company's lists of past, existing or potential clients or customers; and

  7. Any other information or documents which the Company reasonably regards as being proprietary or confidential, or which the Company is required by any of its directors, officers or Employees, or by any third party, to keep confidential.

B. **Ownership of Proprietary Information; Assignment of Inventions.**

  1. Employee hereby acknowledges that the Company is the owner of the Proprietary Information and Employee's assistance in the development of any Proprietary Information is or will be as an Employee of the Company and, as such, Employee hereby renounces any claim to the Proprietary Information.

  2. Employee hereby agrees not to dispute, contest or deny any such ownership rights of the Company (or any third party, except to the extent authorized to do so by the Company), either during or after Employee's employment



EXHIBIT A

V5

with the Company.

3. Subject to Paragraph B(4), Employee hereby assigns and agrees to assign to the Company at any time during and after Employee's employment with the Company, promptly at the Company's request and without additional compensation, all of Employee's right, title and interest in and to any Proprietary Information which Employee heretofore or hereafter may develop, or contribute to, or in which he or she acquired or may acquire rights, in whole or in part, as a result of his/her employment by the Company, and to sign such documents, provide such information and take such actions (or refrain from such action as may be requested by the Company) as may be reasonably necessary to accomplish such assignment.

4. Pursuant to the Illinois Employees' Patent Act, Public Act 83-493 (the "**Patent Act**"), the parties agree that Paragraph B(3) shall not apply to an invention for which no equipment, supplies, facility or trade secret information of the Company was used and which was developed entirely on Employee's own time, unless the invention (i) relates to the business of the Company or to the Company's actual or demonstrably anticipated research or development; or (ii) results from any work performed by Employee for the Company.

5. Subject to the requirements of the Patent Act, Employee acknowledges that any computer software or programs, documentation, works of authorship or other copyrightable works created in whole or in part by Employee during his employment with the Company shall be considered "works made for hire" under U.S. Copyright Act, 17 U.S.C. 101 and shall become part of the Proprietary Information.

6. During Employee's employment and for six (6) months immediately thereafter, upon written request by the Company, Employee shall notify the Company of all patents and copyrights claimed or applied for by Employee and provide the Company with a description of such patents and copyrights sufficient to enable the Company to consider whether the works over which they are claimed constitute, relate to, or are derived from, the Proprietary Information.

C. **Nondisclosure of Proprietary Information.** Employee agrees to hold the Proprietary Information in the strictest confidence, both during and after Employee's employment with the Company. To this end, Employee shall:

1. Not make, or permit or cause to be made, copies of the Proprietary Information, or use the Proprietary Information, except as necessary to carry out Employee's duties as prescribed by the Company;

2. Not disclose or reveal the Proprietary Information, or any portion thereof, to any person except other Company Employees or others to whom disclosure has been authorized;

3. Take all reasonable precautions to prevent the inadvertent disclosure by Employee of the Proprietary Information to any unauthorized person;

4. Not transport or cause to be transported the Proprietary Information outside the premises of the Company, except as necessary to carry out Employee's duties as prescribed by the Company; and

5. Not, without the Company's express written authorization, participate directly or indirectly in the development, marketing, sale, licensing or other exploitation of software or other products or services which embody or are derived from the Proprietary Information.

D. **Return of Proprietary Information.** Upon request by the Company or upon termination of employment, Employee shall deliver to the Company all written or printed documents, all tapes, disks and other electronic media (including without limitation any electronic mail and any attachment thereto) and all other tangible property in Employee's possession which contain any Proprietary Information.

### III. Non-Solicitation/Non-Competition Covenants.

A. **Non-Solicitation of Employees.** During Employee's employment and for twelve (12) months immediately thereafter, Employee will not (on behalf of any person or entity other than the Company), directly or indirectly: (i) employ, retain or solicit for employment or retention (or assist any other party to take any such action), any individual who is, or was at any time during the three (3) month period immediately preceding the termination of Employee's employment, an employee of the Company; or (ii) solicit or encourage any independent contractor of the Company to alter or diminish his/her relationship with the Company.

B. **Non-Solicitation of Customers.** During Employee's employment and for twelve (12) months thereafter, Employee will not (on behalf of any person or entity other than the Company), directly or indirectly, provide any service offered by the Company, or solicit for the purpose of providing any service offered by the Company, to any customer, client,

or other user of the Company's services with which Employee conducted business on the Company's behalf at any time during the twelve (12)-month period immediately preceding the termination of Employee's employment. For the sake of clarity, Employee understands and agrees that the term "customer or client of the Company" also includes, but is not limited to, any counterparty, broker, financial institution or trading desk with which the Company conducted transactions for the purchase, sale or exchange of stock options or other derivatives.

C. **Non-Competition.** During Employee's employment and for the period of six (6) months thereafter, Employee will not, anywhere in the United States, become employed or engaged by any person or entity that competes with the Company in the Business, for the purpose of performing job duties or other services that are similar to the job duties or other services that Employee performed for the Company at any time during the twelve (12)-month period immediately preceding the termination of Employee's employment.

D. **Non-Association.** During Employee's employment and for the period of twelve (12) months thereafter, Employee will not, anywhere in the United States, become employed or engaged by any person or entity (a "Subsequent Employer"), if (i) such Subsequent Employer employs less than 250 employees, or is involved in any activity that competes with the Company in the Business regardless of the number of employees, and (ii) such Subsequent Employer has hired or does hire another person who was employed by the Company during the eighteen (18)-month periods immediately preceding or following the termination of Employee's employment.

E. **Previous Non-Competition Agreements.** Employee hereby represents that, except as Employee has disclosed in writing to the Company, Employee is not a party to, or bound by the terms of, any agreement restricting Employee from competing, directly or indirectly, with the business of any party or otherwise engaging in any particular type of business. Employee further represents that Employee is under no obligation or restriction that would in any way prohibit, restrict, limit or otherwise be in conflict with Employee's employment with the Company. Employee represents that Employee has not removed, copied, reproduced, any confidential or proprietary information for any prior employer regardless of whether or not Employee is or was under any obligations of any other agreement with any previous employer. <u>Employee acknowledges that the Company respects the confidential or proprietary materials of other persons and entities, and expects the same of Employee</u>.

## 7. General Provisions

A. **Injunctive Relief.** Employee acknowledges and agrees that any breach or threatened breach by Employee of any of the provisions of this Agreement will cause irreparable harm and continuing damages to the Company and that the remedy at law for any such breach or threatened breach will be inadequate. Accordingly, in addition to any other remedies that may be available to the Company at law or in equity in such event, the Company shall be entitled to seek and obtain, from any court of competent jurisdiction, a decree of specific performance and a temporary and permanent injunction, without bond or other security and without proving special damages or irreparable injury, enjoining and restricting the breach or threatened breach.

B. **Complete Agreement.** This Agreement represents the complete agreement and understanding between the parties, and supersedes and preempts any prior understandings, agreements or representations by or among the parties, written or oral, which may have related to the subject matter hereof in any way. No modification of any of the terms or provisions of this Agreement shall be effective unless executed in writing by Employee and by a duly authorized officer of the Company.

C. **Assignability.** This Agreement is not assignable by Employee, but in any event shall be binding upon any of Employee's heirs, executors, administrators, assigns and legal representatives. The Company may assign this Agreement to any successor to all or a part of its business which employs Employee, and this Agreement shall inure to the benefit of the Company as well as its successors and assigns.

D. **Severability and Equitable Modification.** If any clause, term or provision of this Agreement or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Agreement or the application of such clause, term or provision to persons or circumstances other than those to which it is invalid and unenforceable, shall not be affected thereby, and each clause, term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law. If any court of competent jurisdiction shall deem any provision of the Agreement too restrictive, the other provisions shall stand, and the court shall modify the provision at issue to the point of greatest restriction permissible by law.

E. **No Waiver.** Any waiver of breach of any of the terms, provisions, or conditions of this Agreement must be in writing to be effective, and shall not be construed or held to be a waiver of any other breach, or a waiver of, acquiescence in, or consent to any further or succeeding breach thereof.

F. **Governing Law.** The terms and provisions of this Agreement shall be governed by and construed according to the laws of the State of Illinois, without regard to its principles regarding conflict of laws.

EMPLOYEE UNDERSTANDS THAT EXECUTING AND AGREEING TO BE BOUND BY THIS AGREEMENT IS A CONDITION TO AND PREREQUISITE OF HIS/HER EMPLOYMENT WITH THE COMPANY. EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS HAD THE OPPORTUNITY TO CONFER WITH LEGAL COUNSEL CONCERNING THIS AGREEMENT. EMPLOYEE HAS HAD AMPLE TIME TO CONSIDER THIS AGREEMENT AND BY SIGNING BELOW, ACKNOWLEDGES THAT EMPLOYEE IS ENTERING THIS AGREEMENT KNOWINGLY AND VOLUNTARILY AND INTENDS TO BE BOUND BY IT.

AGREED TO AND ACCEPTED BY:

_____
**Employee Signature**

_____
**Printed Name** E.M. Buckley

_____
**Date** 23 Jan 07