## PEAK6 INVESTMENTS, L.P.
## NON-COMPETE AGREEMENT

I acknowledge that PEAK6 Investments, L.P., a Delaware limited partnership and its affiliates (individually or collectively, as the case may be, "PEAK6") conduct a broad and evolving range of businesses and, because of the nature of PEAK6's businesses, PEAK6 operates on a global basis. I understand that in the performance of its investment trading, asset management, brokerage, financial services and related services, PEAK6 invests in financial instruments traded on exchanges located throughout the world, and on a bilateral basis with counterparties located throughout the world, I further understand that it is not necessary to be physically present on such exchanges or with such counterparties in order to engage in such activities. Rather, all that is necessary is the means to communicate with those capable of facilitating such transactions on my behalf or on behalf of PEAK6. Accordingly, I understand the need for the restrictions contained in this Agreement to be without limitation as to location, I also understand that the nature of my responsibilities for PEAK6 exposes me to PEAK6 Confidential Information (as defined in the Non-Disclosure Agreement between me and PEAK6), and that this Confidential Information is a key to PEAK6's competitive advantage and business.

I also recognize that PEAK6 takes significant steps to preserve and protect its business and competitive advantage. I understand that any loss or erosion of PEAK6's competitive advantage caused by my engaging in certain types of activities outlined below in this Agreement could have severe repercussions on PEAK6's business, including the possibility of substantial investment losses for the partners of PEAK6 who entrust PEAK6 to manage their invested capital. I recognize and accept the individual responsibility that I have in the effort to protect and to preserve PEAK6's business and competitive advantage.

1. **Non-Competition**. During my employment with PEAK6, and during the Restricted Period following the end of my employment, I agree not to, directly or indirectly, engage in any Competitive Activity.

  (a) "Restricted Period" means the 0, 3, 6, 9 or 12 month period following the end of my employment with PEAK6, as elected by PEAK6 within 10 days following the end of my employment.

  (b) "Competitive Activity." I will be engaging in a Competitive Activity if:

    (i) I became an employee of a Competitive Enterprise in a capacity that is similar to the capacity I was in, or provide services that are similar to the services I provided, or with responsibilities that are similar to the responsibilities I had, in each case, when I was employed by PEAK6; or

    (ii) I become an advisor or consultant to a Competitive Enterprise in a capacity that is similar to the capacity I was in, or provide services that are similar to the services I provided, or with responsibilities that are similar to the responsibilities I had, in each case, when I was employed by PEAK6; or

    (iii) I, directly or indirectly, for or on behalf of a Competitive Enterprise utilize or develop quantitative analytics which are based on information that is proprietary to PEAK6 and which I either utilized or developed when I was employed by PEAK6; or



EXHIBIT B

(iv) I, directly of indirectly, for or on behalf of a Competitive Enterprise, oversee one or more individuals that utilize or develop quantitative analytics which are based on information that is proprietary to PEAK6 and which I either utilized or developed when I was employed by PEAK6; or

(v) I, directly or indirectly, become a partner or principal of a Competitive Enterprise; or

(vi) I, directly or indirectly, form, or acquire greater than 1% equity, voting, revenue, income, profit, loss or other economic interest in, any Competitive Enterprise.

(c) "Competitive Enterprise" means any business that (i) engages in any of the investment strategies, trading strategies or any other business activities identical or similar to any of those engaged in by PEAK6, or (ii) owns or controls a significant interest (in PEAK6's sole determination) in any entity that engages in any of the investment strategies, trading strategies or any other business activities identical or similar to any of those engaged in by PEAK6.

2. **Restricted Period Payment.** The Restricted Period Payment will be equivalent to the average base monthly salary during the last 18 months of my employment with PEAK6 (excluding any predecessor employer). I will receive the Restricted Period Payment each month during The Restricted Period, provided I do not engage in any Competitive Activity. If this Agreement is determined by a court of competent jurisdiction to be void or unenforceable in whole or in part, or is breached by me, any obligation of PEAK6 to make Restricted Period Payments (other than those required by law) will terminate. In the event that PEAK6 ceases to make required Restricted Period Payments, I will cease to be bound by this Agreement.

3. **Reasonableness of Restrictions.** I understand the global nature of PEAK6's businesses and the effort PEAK6 undertakes to develop, preserve and protect its business and its competitive advantage. Accordingly, I agree that the scope and duration of the restrictions and limitations described in this Agreement are reasonable and necessary to protect the legitimate business interests of PEAK6, even if any provision of Section 1 may limit my ability to earn a livelihood in a business that is identical or similar to any of the businesses in which PEAK6 is engaged for some period of time. I acknowledge that all restrictions and limitations relating to the period following the end of my employment will apply regardless of the reason my employment ends.

4. **Notice to Future Employers.** During the Restricted Period, I will notify any subsequent employer of my obligations under this Agreement prior to commencing employment.

5. **Other Information.** Each affiliate of PEAK6 is a third-party beneficiary of this Agreement and may enforce PEAK6's rights under this Agreement. If a court, mediator or arbitration tribunal determines that any provision contained in this Agreement is unenforceable in any respect, then the effect of such provision will be limited and restricted so as to permit the provision to be enforceable or, if that is not possible, such provision will be removed from this Agreement. In either case, this Agreement should be interpreted, even if modified, to achieve the full intent expressed, and the other provisions of this Agreement will remain in force and unmodified and will be enforced as written. Because money damages for the breach or threatened breach of my obligations under this Agreement may be inadequate to properly compensate for losses resulting from my breach, PEAK6 may seek injunctive relief (a court order preventing me from doing something) or specific performance (a court order compelling me to do

something) or other remedies "in equity" for such a breach or threatened breach, without first being obligated to post any bond or to show actual damages. In addition, PEAK6 may obtain any other remedies available at law, in equity or under this Agreement. In the event of any dispute relating to this Agreement, it will be interpreted and enforced according to the laws of the State of Illinois (without regard to conflict of law principles). I both consent to, and submit exclusively to, the personal jurisdiction and venue of the state and federal courts located in Cook County, Illinois. This Agreement represents the entire agreement between me and PEAK6 regarding the matters covered in this Agreement and supersedes any prior agreement between me and PEAK6 regarding such matters. For purposes of clarification, this Agreement does not amend, modify or supersede any current, prior or future PEAK6 deferred compensation plan or employee incentive program No change or waiver of this Agreement will be effective unless made in a writing signed by each of us.

Therefore, for good and valuable consideration, the receipt of which hereby is acknowledged, I agree to all of the provisions of this Agreement.

Agreed:

Signature:

Name:

Date: